PlLC, et al. Oral argument not to exceed 15 minutes for plaintiffs, 15 minutes to be shared by the defendants. Jamie Worrow for the appellant. You may proceed. Good morning, Your Honors. Good morning. I will please the Court. Jamie Worrow, appearing on behalf of Plaintiff Appellants American BioCare and the other Plaintiff Appellants, which I have collectively referred to in my I've reserved seven minutes for rebuttal time. I believe that for two reasons. One, I believe that our side is fairly thoroughly briefed, and also I think I will need more time to address issues that they might raise. So in opening, I recognize that this case may not I understand. No one likes this case. I don't necessarily like it myself. I understand that it is a hard case to address and may be disfavored. We have alleged a RICO conspiracy claim against a law firm, a lawyer, and while these cases may be disfavored, we believe that we've pled facts and cited law that support this case going forward, at least so that we can prosecute it to prove that we can demonstrate that what we've alleged in our complaint is true. Just because someone carries a bar card does not obviate that person or that firm's responsibility under the RICO statutes. And we've cited case law in our briefing that addresses these very issues. For example, our Sod v. Bell, 2013 U.S. District Lexus 122496. This is a case where an attorney motioned to dismiss a RICO action was denied under circumstances where he provided false assurances to sellers in order to convince the sellers to close the transaction. That's kind of similar to what's going on in this case. Well, I mean, I really was, certainly I was kidding you. It is a tough case you've brought and that's good. It gives us more interest. But the feature that I am interested in pretty closely, and your opening statement said he encouraged or urged people to, or urged the buyers to buy, the lawyer, counsel. In the case that I cited, yes. And so you are familiar with Rule 9's requirement for particularity. Correct. And throughout your brief, and throughout your complaint, it struck me as you lack the required by Rule 9. There are generalities, and so I'd appreciate you addressing that matter. Very good. And point us to the paragraph or the sentence or two that specifies exactly what, and we'll start with counsel, the firm's prod. Your Honor, it's our position that this was not just a case where the attorney was giving legal advice or representing a bad actor. This is a case where Because that wouldn't be fraud. That would not be fraud. Thank you. What we have is an attorney who was invested in the Ruerich Enterprise and facilitated its operations. Brandon Booth, the attorney who works for Howard & Howard, and this is Ruerich Enterprise is not just by giving advice. He created over 18 entities in various states, all home health care entities, and all owned by the same individuals. Why does one need so many home health care entities? Why not? Well, I guess you have to understand That kind of begs the question. I don't see the obviousness of that. Okay, but you have to understand the nature of what the Ruerich Enterprise, how it operated through the Ruerich individuals and the back office managers, not parties to this case, but their goal was to take over and or loot home care entities. So you say. Well, under the Rule 12b6 standard, these allegations have to be taken as true. Who were the back office people? The back office managers are related to the Ruerich individuals by family as well as by a long working relationship. They are Vicki Welty and Tina Griffith. They are responsible. That's they too, because isn't one a spouse? No. I believe it's a sister. Sister. Okay. Related. But the back office managers are managing what? They do a back office platform for these home health care entities. There's a lot of rules and regulations that are associated with this industry. They operate, they make sure or supposedly. Are they doing it for the ABI entities? They were, yes, as part of that. But that's how they. And they were able to. Correct. They were able to manipulate the financial reporting, the financial books. They had all the control over the financial operations of these businesses and other businesses. That's what they were designed to do. So, for example, and I'm getting. I'm sorry. I know your time is limited, but the back office people were the ones who were doing the manipulation of the ABI entities. Yes. That what they were manipulating. Yes. So, really briefly, to go to your point, and then I'll get back to other things that Mr. Booth did. The default that they rely upon as, oh, ABI is in default. How could this happen? They, they're in the wrong. They can't sustain their claims because they're in default. Well, here's an instance where the back office platform managers created the weather, and now they're complaining that it's raining. They, they were in control of the financial reporting. Who do they report to? Well, in this instance, they were, they were, the financial reporting was regarding the. No, I meant who's their boss. Oh, well, it's, it depends, but. Why did the bosses, why did the entity that owned them not watch them? Not, not. Because. Thwart this behavior, or find out about it. Our allegations state that they reported to the Rourke individuals. They reported to Kevin Rourke, who's the architect of this entire enterprise. But. Who hired Kevin, how's Kevin Rourke in charge? Because he's. ABI gave it to him, right? Let him run it. Through contracts, yes. I mean, he was managing this business, and he. For them. For them, correct. But he wasn't managing it for their benefit. He was managing it for a self-serving purpose to serve this enterprise. So the reason that they are in default is because taking instructions from Mr. Rourke, Kevin Rourke, they failed purposefully to provide this financial reporting. So it's part and parcel of the activities of this enterprise that they landed in default with first merit. So they cannot use that as an excuse because it's part of the harm that was, you know, inflicted upon my client, you know, as part of this enterprise. But don't. Brandon Booth. One key issue seemed to me to be proximate cause under the Supreme Court's three major cases. Sure. So could you just lay out very clearly how you think the proximate cause requirement is satisfied here? Yes, I can do that. So Holmes, Ansa, and Hemigroup do not require, what they do require, what is needed to plead a RICO violation is that the injury in business or property, by reason of a violation of 1962, it needs to be a direct harm that is caused by the same conduct that is the fraud. And that's what we have here. We have, we've alleged that, you know, the conduct that's giving rise to the harm is the same conduct that's giving rise to the fraud, which is the first merit transaction. They allowed for us to be in default. They violated a court order, which a state court held them, the RUARC individuals, in contempt for violating that order. They misrepresented that first merit could enter into this contract. And they admit that we were the target of their scheme because Howard and Howard admitted in open court that they, that the RUARC individuals wanted to take over the subsidiary entities  They wanted to cause harm through this transaction, through this financial institution fraud. And so we're alleging that not only can we rely upon this predicate act of financial institution fraud as part of our RICO conspiracy, but that we can also, but that it is also the same conduct, the fraudulent conduct, that gives direct rise to our harm. So that's all that Holmes and Ansa and Hemigroup require. Now, Ansa and Hemigroup are distinguishable for the facts in this case because they found, okay, very good, your honors. If you want to continue, you may, or you can use your time and rebuttal as you. I can use my time. I do believe very in some that our briefs stand for themselves and any questions, I was here to answer questions mostly. Thank you. Thank you, your honors. Excuse me. Good morning. May it please the court. Eric Wedrock. I appear on behalf of the appellees, JIRA LLC, JIRA III LLC, Redemption Healthcare LLC, and SHHC Services TX LLC. Your honor, there was, your honors, there was two bases for this appeal. One being the dismissal of these new plaintiffs that were added in the First Amendment complaint. We've addressed that in our brief, and the points I'd like to make regarding these new defendants is ABI has admitted that the first- New defendants or new plaintiffs? Excuse me. Thank you, your honor. New plaintiffs. In the complaint, ABI admits that their interest in and all the assets of these new plaintiffs were sold by First Merit after the foreclosure sale. There is no claim that ABI maintained any ownership interest in these, and your honor, the only claim that somehow ABI still maintains an interest in these companies is this conjecture that somehow this sale was cloaked in some sort of bad faith or some sort of commercially unreasonable terms. How would that actually work? How would that work? Yeah. To void the sale. Well, there is a, it doesn't void the sale so much as it, under MCL 440.9617, subparagraph 2, if there was some sort of bad faith, then the JIRA defendants, my clients, the JIRA defendants would take those assets subject to the interests of ABI. But they have not alleged, but for this First Merit sale that they claim was somehow not commercially reasonable or done in bad faith, there is no, there is no, there is no bad faith. The JIRA defendants. They have alleged a fair number of things that say it's bad faith, that was in violation of the stop order from Judge O'Brien. There was a status. That's one. You know which two. I'm aware of that. There's a status quo order in place, but the important thing to know about that is that neither First Merit nor any of my clients were part of that litigation and were subject to that order. So First Merit, free and clear of that order, sold the assets to my clients, free and clear of that order. There was a finding of civil contempt by Kevin Burrark, Jamin Burrark, and Jason Lange, but those aren't my clients. Those aren't the JIRA defendants. So while the sale... So is it your position that contempt would have been the only remedy there for that, for that problem? Handedly, Your Honor, I wasn't involved in that lower case litigation, so I don't know if there was other options available. But the point, the point that I'm trying to make is that my client was not in violation of a court order. None of my clients were. It goes to the... So thus, there's no bad faith. So thus, there's no bad faith. Thus, you take free and clear and... And my clients take free and clear, and then there was an affidavit by the, one of the members of my clients that said they did not authorize this lawsuit. The affidavit, how are we going to take note of that? The affidavit was attached... Publicistics. I believe... Motion to dismiss. I'm sorry? The motion to dismiss... In the district court, correct. By the defendant. It was an affidavit attached to the motion to dismiss. That's correct. Normally, that's not considered in... This was a 12b1 challenge. The court did consider outside the pleadings, documents outside the pleadings in making that determination. And it was a 12b1 because it's alleging the standing problem vis-a-vis ABI... That's correct. Bringing in ABI entities. Why does it matter whether ABI entities are a plaintiff here? I think it's inappropriate, so I don't think that ABI has any standing to bring those, but more... Why does anybody care if ABI is the proper plaintiff here and ABI remains? Why does anybody care if inappropriate claims are brought, Your Honor? Your answer could be that there are different damages for ABI entities than for ABI. So that would be a reason why you would care. I guess the intention with trying to get these parties dismissed is to pare down what the real dispute is. I don't believe that these ABI entities, these new plaintiffs added in the first amended complaint are part of this dispute between the parties. And that's why we filed the motion seeking to have them dismissed. You say they're not a part, and do you give us a rationale for that? Because after the first merit foreclosure and the subsequent sale to my clients, ABI lost all rights and ownership, all the assets of those entities. I do think it's important to note that this entire case began back in 2013 when ABI filed suit against Kevin Roerach, Jamin Roerach, Jason Lang, and a number of other entities. That case was administratively closed in April of 2014 when Kevin Roerach filed for bankruptcy. That case was recently reopened on the motion of ABI in March of 2017 and now is set for trial November 6th, 2017. The importance of that is that one of the defendants in that case is KJJ Holdings, which is one of the new plaintiffs in this case, the exact same attorneys for ABI. Really, we have no way to take notice of any of that. We sure don't need one more case. Fair enough, Your Honor. The second point I would like to make is with regard to the RICO claims against my clients, throughout the complaint, nowhere does ABI allege any actions that would constitute mail or wire fraud on behalf of my clients. It's a 70-page complaint. That is correct. Lots and lots of words. Your Honor, in their appellant's brief, they cite paragraph 238 of the First Amendment complaint as support for their contention that they pled their RICO claims with sufficient particularity. Paragraph 238 of the First Amendment complaint goes on for about four pages. I think there's subparagraphs through HRI, but those subparagraphs all talk about the action of the RUARC individuals, which is Jamin, Kevin, and Jason Lang. It talks about the back office managers and their actions, and it talks about Howard and Howard only. There is... The essence is that the RUARC defendants, parties, and the back office are the ones controlling JIRA entities, right? I think that the RUARC individuals, at least two of them are members of the JIRA defendants. The back office managers are, I believe, employees of the JIRA defendants, but the actions of those individuals are separate and apart from the JIRA defendants. Perhaps they should have brought their claims against the RUARC individuals and against Jamin... I'm sorry, Jason Lang, or the back office managers. Did you just say that the back office managers are employees of JIRA? I think they're employees of... If I did say that I was misspoken, my understanding is that they're employees of these new plaintiffs. I don't believe that they're employees of JIRA, JIRA 3, SHHC, or Redemption. Does the complaint allege who the back office employees are employees of currently? My recollection of the complaint is that it defines Welty and the other individual that my sister counsel mentioned as the back office managers. I believe that those two are the individuals defined. But the question was, does the complaint say that they're affiliated with any of your clients? I don't believe it does. I'm sorry. And your red light is on, I'm afraid, so... Thank you, Your Honors. Your Honors, good morning. My name is Tom Cranmer, and I represent the defendant law firm in this case. As the panel knows, this is a bit of an unwieldy case, but I believe with regard to the court's decision as to my client, the central issue that the court has to decide is a rather focused one, and that is whether or not ABI has properly stated a RICO claim against my client. And respectfully, I submit that they have not. Their claim, if you look at it closely, really boils down to two predicate acts of alleged fraud, neither of which were perpetrated directly against ABI. Instead, ABI alleges that both acts were perpetrated against banks who aren't even a party to this litigation. And moreover, and I think importantly, these acts are unconnected to one another. You say the court, you know, it's pled in a way that we merge all this conduct together and we have a sin in the end, a RICO. Do you think this court, how do you suggest this court overlook that? I mean, it's there that your client was, you know, truly involved. Your colleague, your client was truly involved in all of this, that he knew it was against the stay order to get involved here, and then he's the non-compete. He's a very active party in pursuing new business that competes with the one he just sold. Well, to hopefully answer your question, Your Honor, I think two things. One is, and it's an issue that you raised earlier in connection with the appellant's argument, and that is the Rule 9 requirement with regard to allegations of particularity as they relate to fraud. And I think what we have here and what the district court recognized is just what you suggested. There's kind of a mushing together of ideas. In fact, the district court referenced it as casual reference to the various predicate acts of mail fraud, wire fraud, and bank fraud. And again, I think we have to, with all due respect, focus on those particular predicate acts and whether or not the plaintiff has properly alleged and pled predicate acts that would support a RICO claim. And again, I think they have not done that. Well, their essence is they're alleging these back office managers were part of the RUARC enterprise, right? And they're the ones that caused the default, that caused the bank to foreclose, and that your client is involved in all this. That seems to be their allegation, Your Honor. I agree with that. But I have two responses to that. First is something that I think, Judge Moore, you raised, and that's the whole issue of proximate cause and whether or not these activities were really the proximate cause of the harm that was suffered by ABI. And again, I think if you look at page 38 and 39 of our brief, we have laid out what I consider to be kind of the chain of events in terms of that proximate cause. And the very first step... But by the way, do those pages quarrel in any way with the layout that comes from the plaintiff? Because if it does, you know, it shouldn't. Agreed. But I don't think it does. All right. I think those facts are... That's it. Proceed then. Okay. Sorry. And if you take a look at that, it shows kind of, again, the chain of events. The first chain of event is the default by ABI. And then the fact that the second link, if you will, is the fact that they failed to cure the default for more than a year. Next is the fact that First Merit offered the sale of these assets to ABI and they didn't take them up. All right. But the essence is, what was the cause of ABI's default? If it was due to the RICO activities of the Rurark Enterprises, there would be a connection. Well, yes, but... As opposed to it just being ABI's own bad management and its own fault. Understood, Your Honor. But again, I think you have to... And I think the Supreme Court tells us, if we take a look at, for example, the Hemi Group case, that you have to look at the chain of events. And generally, I think the court said in the Hemi case at pages six and seven, that the the first event, if you will. The first event in this case was the default of ABI. And so I would respectfully submit, again, following up on Judge Moore's questions, that what the plaintiff really hasn't shown and can't show, respectfully, is this proximate cause-causal connection that is required for a RICO claim. You just referred us to 38 to 39 of your brief, and I see that your brief doesn't go that far. The last page of the merits of it is like 35. All right. Judge Moore, and it could be my fault. In terms of the actual hard copy, it's actually page 30 and 31, but at the very top, what I would call the electronic copy, it's 38 and 39. So I may have misled you unintentionally. So I guess I'm a little bit confused why proximate cause couldn't trace a series of events as opposed to saying we're only going to look at one event. I suppose that it could, but again, at least the cases that I've looked at, the United States, suggests that if you start down that path in terms of the tracing, if you will, and you're looking at various different levels, that there's potentially a problem. And I think the ANSA case says the same thing, that a link that is too remote, purely contingent or indirect is insufficient, and insufficient to properly state a RICO claim. And that's what I think we have here by looking at that chain of events that we were just looking at at pages 30 and 31. Your Honors, I see that my time is almost up. And again, as the appellant has indicated, I think we've at least tried to set forth our position in our papers. So if the court or panel doesn't have any further questions, I'll cede my time. Thank you. Your Honors, thank you very much. Thank you. So the proximate cause issue is actually, if they're relying on the default to say there's no proximate cause because of a default, then I think I've made my case regarding why that was part and parcel of the harm that was actually incurred on my client. HOME stands for the premise that you have to look at the entire violation. And that if the harm arises out of the violation, if not but for the entire violation, the harm wouldn't have happened, then maybe we haven't pled a RICO claim. But we respectfully have done that. What violation? Why do you use the word violation? The whole violation of 1962. I believe I'm taking that from HOMES, which is cited in our briefing. If not for their actions with putting us in default and engaging in the first merit transaction, then we would not have that. What about the opportunity to cure? Your client could have fixed that, could have found out that the back office people were undermining or cheating you or whatever you allege. You allege all of that. Why doesn't that interrupt the proximate cause? We tried. We did. Well, where's that pled? It's pled in the complaint. We tried. No, it's pled in our complaint when we talk about the Peachtree financing that we were which the district court just dismissed as not true or too speculative. But again, you have to take our allegations as true. And we had financing lined up. Peachtree made an offer to first merit, which was rejected by first merit. So it was because they had decided to go with the RUARC individuals. Why did they decide that? I have no idea, Your Honor. They're in business to make money, right? Absolutely. But Peachtree offered a seven-figure offer. And we have e-mail, I mean, it goes far beyond, but we do have proof that this was a reasonable and fair offer and should have been accepted. We have testimony from the senior vice president that he wouldn't have entered the deal had he known about the court order. We have, while this might be something that we could get into in discovery to determine exactly how that transaction, why it was rejected, that's not necessarily something that I can address at this point. Well, that might be, say, your claim against H&H. What about against the JIRA defendants? What's your particularity under Rule 9b for JIRA? The JIRA defendants primarily are in the case because they were the vehicle where all the assets were transferred. They're also owned and operated by two of the RUARC individuals. So you can't get around the fact, Jason Lang and Jamin RUARC, so you can't get around the fact that these entities were controlled by the same RUARC individuals that, you know, are the architects and the truly really bad actors of this enterprise. So the RUARC individuals are the subject of suit in a different proceeding, right? I mean, the litigation in this, between these parties, is intense and wide-ranged. The scope of it is huge. Are you counsel in all of these? No. In the state case, we took over for counsel, and there's another attorney who's running it now. We are helping him. We are on the pleadings, but we're not primarily running that state case any longer. We did engage in the bankruptcy proceedings filed by Kevin RUARC. That was just a one-word answer. No. So why do you care whether the ABI entities remain as a plaintiff? Because they're our assets. At the time that they were sold, they had $2.7 million in receivables. We believe that we should have control over that $2.7 in receivables. But why do you need to have them as a plaintiff, as opposed to bringing it on your own behalf? I believe, I'm sorry for interrupting you. I believe it has something to do with the way the contracts lay out in this case. And having them as plaintiffs just makes everything easier with proving. In what ways? What makes it easier? I'm looking for what possible easy about that. I just know that there are certain contracts that we haven't attached, so it goes beyond the scope of the complaint. But the reason that we wanted them in has to do with those contracts. And I apologize that I don't have a better answer for you, Judge Cook. So yes, back to some of the quick rebuttal arguments. I see my time is dwindling. The RIARC individuals control the GIRA defendants. They were also included under 1962D as co-conspirators. So under case law that we've cited in our brief, we don't have to allege that they necessarily participated in a predicate act to hold them accountable under 1962D. Recognizing that if we can't prove that there is a RICO enterprise, that it's not likely that we're going to be able to prove conspiracy to that RICO enterprise. Well, if you get past 12B6, then you're going to be ultimately facing summary judgment. Absolutely. But at least we'll have some time to take some discovery and prosecute this case to the best of our ability. So is your theory with respect to the law firm Howard & Howard involved party, or is it more broadly against the law firm? It's most definitely pointed at Mr. Booth. But we do have other attorneys that misrepresented facts to the court in the state case that were trying to deflect their clients, the RIARC individuals' accountability under the court order and the non-compete agreements. And so I would say that's why we've in large part pleaded against Howard & Howard as a whole. I worry here about that kind of thing. You're pointing to something that you think is their motivation or they were trying to deflect. I mean, do you figure that to be, and this is fraudulent, right? Yes. Wire fraud, all these things, trying to deflect. What did they do with specificity? You see the point? They made misrepresentations to the state court. What are they? They have to be date, time, words. They're detailed in my complaint. They are in my complaint. I'm afraid they're not, counsel. But we'll look again. We'll look again. They're detailed in my briefing and in my complaint. And my time is up. I do have a couple more things if the court needs it. But if I don't, if you don't, then I will say thank you for your time today. I think the judge has questions, but I don't see any questions. We appreciate your argument. We appreciate the argument of all attorneys in this case. It's obviously a complicated case, and we will take it under advisement. Thank you, your honors. Thank you.